The immigration judge denied my client a fair hearing, reached certain conclusions based on his speculation and conjecture, the main one being whether the visa he obtained in September 2011 was a fraudulent visa or not. This was felt following the events of September 11, 2001, and the hearing took place in 2002. There was no finding by the government except the government's attorney that the visa was a fraudulent visa. My client's attorney at the hearing was denied access to cross-examine the preparer of the document who had made the initial finding and sent my client to secondary inspection. Mr. Connolly, you say he was denied a fair hearing, and you say that the visa evidence should not have been admitted, correct? Or he should have been able to cross-examine on it more. Is that right? Mr. Connolly I'm stating that if he was going to reach a finding, my client should have been given a right to cross-examine anybody who was stating it wasn't. Mr. Connolly Precisely. Now, as I look at the Notice of BIA, if those issues were not put before the BIA, how do we have jurisdiction to consider  Mr. Connolly I believe, Your Honor, if you look at the BIA appeal filed by his prior attorney, he states specifically he was denied access to cross-examination. And that's the first ground he states. I don't want to misstate the record. He says neither do I want to state, you know. Mr. Connolly Wait a minute. He says he was denied the admission of evidence material to his claim. Mr. Connolly Right. Mr. Connolly That's what he says. Mr. Connolly Which I believe would be a right. He wasn't allowed to cross-examine. Mr. Connolly Well, he doesn't say I was denied the right to cross-examination. He says you didn't admit evidence material to my claim. That's all he says at the BIA. He doesn't raise a cross-examination issue to the BIA at all. You also said he didn't have a fair hearing, sort of complaining about, I think in your briefing, complaining about the way he was questioned and such. That's not raised from the BIA. My question is, how do we take jurisdiction over issues that you don't put clearly to the BIA? The BIA then Mr. Connolly Your Honor, his prior attorney I believe did. It's just a small, as you know, the form, as you yourself have written a decision on that, that the form itself is not the format, the proper format is raising. He's appealing it. And the appeal issue was my client. Mr. Connolly Let's say he's going to file a brief and he doesn't. Mr. Connolly He does file a brief and that's another issue before the court. Laying aside that issue for a moment, assuming assuming he would have briefed the issue to great extent. Forgetting for a moment the fact that he didn't file it in a timely fashion. My question to you, you're saying that just if you just say to the BIA, he improperly denied admission of evidence. That means you can raise any issue in the world about cross-examination, anything you want. Because that's to tell the BIA all these issues you're mentioning now. Is that right? Mr. Connolly No, Your Honor. What I'm trying to state is that the appeal is putting them on notice that we are appealing the decision or my clients appealing the decision of the IJ and will provide further arguments at the briefing time. But for the moment, he doesn't prevent. He doesn't present because the space isn't there. Wait a moment for the moment. He doesn't present it. My question to you is if the brief if his briefing wasn't before the BIA. It looks to me as if the issue isn't properly before us. It is before you because you have to deal with fairness, Your Honor. Do you believe that the IJ had proper grounds to find or make a finding based on the foreign affairs manual that my client didn't obtain a visa? What reason did the I mean, just a common reading of how the immigration judge arrived at his conclusion is based on a fallacy. It's based on incorrect information. He makes up information. And that's one of the reasons for the due press due process arguments is the immigration judge came to the conclusion that the United States State Department requires every individual in the Middle East to appear for a visa for a non-immigrant visa. The September 11th hijackers didn't. And after that, in a year later, 55 percent of the individuals in Saudi Arabia did. So that was the whole purpose of attaching that to the brief. Insofar as the other argument was, he states he uses a different standard that's applied in the Ninth Circuit. And that is self-serving statements. We assumed the facts assumed by the immigration judge, assuming those facts. There is no impeaching testimony. He's assumed those facts and he's asking for corroboration documents. If an individual, as far as I understand, Ninth Circuit law is, if an individual has testified credibly, he doesn't need to provide corroborating documents. And in this instance, by placing a burden upon my client to provide corroborating documents when he has also shown that he's the president of a legitimate party that was overthrown by a military dictatorship is placing an unequal burden on him. I'd like to just give the balance of my time, Your Honor. Thank you very much. May it please the Court. I'm Pamela Tong-Lau with the Justice Department appearing on behalf of the Attorney General. Your Honor, of the many inconsistencies that the immigration judge cited, the most palpable inconsistency in Nishani's claim for asylum was the fact that he asked to speak with representatives of the Pakistani government when he was detained upon attempting to enter the United States. This act directly undermines his claim that the government was looking for him and specifically looking to kill or incarcerate him. It also clearly reveals a lack of fear for his own safety. This finding was cogently articulated on the record as one of the immigration judge's primary reasons for denying Nishani's asylum claim, and yet it was not addressed at all in Petitioner's brief. Faced with the discrepancy between Mr. Nishani's act, what he did, and what he said about his fear of persecution by the government, it was reasonable for the immigration judge to conclude that Mr. Nishani's actions spoke louder than his words. Mr. Nishani says that he was confused at the time. He says that he was very upset, had high blood pressure, and that state of mind is exactly what gives his act probative value. We have in our federal rules of evidence a rule that recognizes that statements made under the stress of excitement caused by an event are inherently reliable, and that's the excited utterance exception to the hearsay rule. And the theory is that those types of statements are made without … There was no opportunity for the declarant to reflect on what he was saying, no time to make something up. So in this case, the immigration judge was simply applying that common sense principle, and he reasonably concluded that the request to contact the consulate was at odds with the other testimony about fear of persecution. Well, as long as we're on excited utterances, the immigration judge made a number of remarks that I think fall in the category of excited utterances or something else. How do you deal with that? You've got a tough record here in terms of the demeanor of the immigration judge. And he says, we're not in your country. I mean, it's hard seeing a cold record, but it just jumps out at you. It's abusive, what he was saying. What's your response to that in terms of the requirement that there be a fair and impartial forum? Well, my response is that the immigration judge was simply placing the burden where it properly lies. The burden of proof lies with the petitioner to establish his claim that he has a fear of persecution. But don't we have to look at this as how the appearance, here is the judge, and here is a person who's asserting what he thinks are his rights, and the judge is giving him every clue as to how he is receiving the information that's coming in. The judge also gave him many opportunities to explain what were clearly identified inconsistencies in the testimony. And so not only did the judge identify them, he gave the petitioner an opportunity to explain them, and then he explained why he thought those responses were either deficient or... I mean, those are statements that are not the indicia that we have of neutral fact-finders who are trying to find out the evidence. It's hard to say on this record that the judge wasn't biased going in. Now, that may or may not be grounds for reversal on this record. Other grounds may support it, but it's a great concern. I understand the concern, Your Honor. I don't think that the record compels a conclusion different than that which was reached by the immigration judge. He did render a very thorough 20-some page decision that outlines in detail all of the legitimate questions that he had about the petitioner's testimony, the substance of the testimony. What was his basis, though? And that's what your opponent is suggesting. He did have some preconceived notions, and he's arguing to us that there's no basis in this record for the notions that he expressed. Well, the basis in the record is in the fact that, well, first of all, the inconsistency in asking to speak with a government that has apparently said, we don't let our enemies go, and that wants to kill him. That was the main thing that the immigration judge cited. There was also, as for the counterfeit visa issue, the immigration judge said that that factor did not add to the alien's claim of asylum, and that's on page 56 of the record. And the cases addressing this issue require the immigration judge to look at all of the circumstances, not to focus exclusively on one untrue statement or document. And the record shows that that's exactly what the immigration judge did here. He said that the petitioner had no coherent explanation for this apparent change in the visa application procedure between January 2001 and February 2001. So in this one-month period between the petitioner's third attempt to obtain a visa and fourth attempt to obtain a visa, there was this radical change in procedure, apparently. And it's something that there should have been corroborative evidence of, and it should have been readily available to the petitioner. He should have been on notice that it would have been incumbent on him to obtain that for his hearings that were, you know, his hearing was reset several times between August 2001 and April of 2002. So he was clearly on notice that that would be required. Do you want to address the refusal to let them file a brief issue? Because as far as I can tell, everything we've talked about up until now is completely irrelevant based upon the notice that he filed with the BIA. He didn't tell the BIA, I got an unfair hearing, and they could have corrected it there. So it seems to me we don't even have jurisdiction over it unless there's something wrong with the briefing denial. So do you want to address that question? Yes. The BIA did not abuse its discretion in denying the request to file an untimely brief. There is no prejudice to the petitioner. He has not made a proffer of what he would have said. I think he said today what he would have said. We know from briefing what he would have said. Right. If it turns out to be a winning argument, there would be prejudice, right? Well, we don't know he'd have said that to the BIA. We just know what he says does. Right. I think that the BIA, when it rejects a brief, it sends it back. It's not in the record. The brief that was apparently attached to his motion is not in the record that I have. I wasn't quarreling with you, but if you say we don't know what he would have said and he has some things he said here, at least we have an idea about what he might have said, and we can weigh that as whether or not he's prejudiced or not, right? So it kind of rises or falls. The prejudice issue may rise or fall on the merits. If you're right on the merits, then he hasn't said anything here today that would create prejudice. On the other hand, if he said something that would cause us to reverse, then he's got at least a potential for prejudice, and we don't know because we don't know what was filed, right? Right. But the standard is abuse of discretion, and the bottom line is that clerical scheduling errors don't constitute good cause, much less extraordinary circumstances, to support an extension of the filing deadline. And in any event, the petitioner waited six days after he discovered his mistake to file his motion and his brief with the BIA. I had a number of other items that I wanted to address, Your Honors, but they're all covered, I think, well enough in our briefs, so unless the Court has any further questions. Any further questions? No. And your briefs are good, and we appreciate the time you're being succinct here, and I hope you don't take from the shortness of the presentation that we don't think the case is important because we spent a lot, a lot of time on these cases. Thank you very much. Thank you. Rebuttal? Yes, you get rebuttal. Yes, you reserve four minutes. Just to correct the record, thank you very much. Counsel, I don't think it's intentionally misstating the record, but there is misstatements made. My client never ever said they don't let the enemies leave Pakistan, and number two, the dates when the visas were given are completely incorrect. He applied for visas in 1986 and 87, not in January 2001 and February 2001. He next applied in 2000, 2001, where he sent it by FedEx, so there's a 17-year gap, not a one-month gap. That's a big issue and a big misstatement. Why he called for the Pakistani individual or government official is because he thinks he's having a heart attack at the airport, and they're saying it's not his passport. He's trying to prove to the U.S. government that's his passport given by a Pakistani government official, not for any other reason because his whole identity, he's being arrested as a suspect. He doesn't want to go to Guantanamo. He doesn't want to be sent out of there. He's got nothing to do with terrorism, so that's why he's asking for an individual to prove who he is. That in no way disproves his theory, honestly. That's a complete red herring. Regarding the standard, what is the standard? What is the standard? Six days? The case that's called Rwanda, it was eight months later that the Ninth Circuit allowed the individual to file a brief. This was filed six days. Eleven days they received it, and they don't state a standard. What's the prejudice to the government? None. It's extreme prejudice to my client not to have had his brief read before the BIA. Thank you very much. Thank you very much for your argument. The case that's heard will be submitted. Next case on the oral argument calendar is Hu versus Gonzalez.
judges: Farris, Fernandez, Thomas